FRANK D. POND (Bar No. 126191)
KEVIN D. JAMISON (Bar No. 222105)
kjamison@pondnorth.com
JUSTIN F. CRONIN (Bar No. 260188)
jcronin@pondnorth.com
POND NORTH LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071
(213) 617-6170
(213) 623-3594

Attorneys for Defendant CBS
Corporation, a Delaware corporation,
f/k/a Viacom Inc., successor by merger
to CBS Corporation, a Pennsylvania
corporation, f/k/a Westinghouse Electric
Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE YOCUM and TINA YOCUM,<br><br>                  Plaintiffs,<br><br>          vs.<br><br>CBS CORPORATION, a Delaware corporation, formerly known as VIACOM INC., successor by merger to CBS Corporation, a Pennsylvania corporation, formerly known as WESTINGHOUSE ELECTRIC CORPORATION; FOSTER WHEELER LLC; GENERAL ELECTRIC COMPANY; IMO INDUSTRIES INC., individually and as successor-in-interest, parent, alter ego and equitable trustee of DELAVAL STEAM TURBINE CO.; SYD CARPENTER, MARINE CONTRACTOR, INC.; and DOES ONE through ONE HUNDRED, inclusive,<br><br>                  Defendants. | Case No:  2:17-CV-01061<br><br>**DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28 U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN**<br><br>[*Removed from Los Angeles County Superior Court Case No. BC630115*]<br><br>Action Filed:      August 11, 2016<br>Removed:           February 9, 2017 |

1

## NOTICE OF REMOVAL BY DEFENDANT CBS CORPORATION

Defendant CBS Corporation ("Westinghouse")[1] hereby removes this action from the Superior Court for the County of Los Angeles, California based on federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1) (the "Federal Officer Removal Statute"). In support thereof, and while reserving the right to respond more fully if a remand is sought by Plaintiffs, Westinghouse offers the following short and plain statement of the basis for its removal.

## BASIS FOR REMOVAL

1.      The Federal Officer Removal Statute provides that a civil action that is commenced in a state court against or directed to "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed "to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1).

2.      A notice of removal must be filed within 30 days of a defendant's receipt of the initial pleading or, "[i]f the case stated by the initial pleading is not removable," within thirty days after defendant's receipt of "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. § 1446(b)(3).

3.      Removal is proper in this case as one or more claims stated against Westinghouse fall within the jurisdictional scope of 28 U.S.C. § 1442(a)(1) and as removal has been affected within 30 days of the service of Plaintiffs' First Amended Complaint upon Westinghouse.

## FACTS ESTABLISHING THE BASIS FOR REMOVAL

4.      On January 6, 2017, Plaintiffs filed their First Amended Complaint in

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

2

1  this asbestos personal injury action in the Superior Court for Los Angeles County,

2  California.  (See, Pls.' First Amd. Compl., attached as "Exhibit A").

3        5.      Westinghouse was served with said pleading on January 13, 2016

4        6.      Plaintiffs allege that Wayne Yocum ("Mr. Yocum") has contracted

5  mesothelioma due to asbestos exposure throughout his service in the United States

6  Navy from 1965 through 1972, including asbestos exposure while he was assigned for

7  training at the Naval Reactors Facility ("NRF" located within the Idaho National

8  Engineering Laboratory ("INEL") near Idaho Falls, Idaho.  (Exhibit A at2:23-3:4).

9        7.      In relevant part, Plaintiffs assert that Westinghouse is strictly liable for

10 Mr. Yocum's injury based on its supply and/or use of asbestos-containing thermal

11 insulation at INEL.  (Id. at 9:14-10:3).

12       8.      The NRF was a Navy nuclear propulsion laboratory and training facility

13 which Westinghouse managed under contract with the Navy and Atomic Energy

14 Commission ("AEC") and subject to constant monitoring and supervision by on-site

15 government officers.  (Depo. of Leo Romer taken jointly July 21, 1993 in the cases

16 entitled *Bernice Tuck v. Owens Corning Fiberglass Corporation*, State of Idaho,

17 County of Bannock, Case No. 41528-C, *All Idaho National Engineering Laboratory*

18 *(INEL) Actions*, United States District Court for the Eastern District of Pennsylvania,

19 Case No. 875, and *Master Asbestos File No. 2*, United States District Court of Idaho,

20 Case No. 3695 at18:5-19:7; 25:23-26:5, relevant excerpts of which are attached as

21 "Exhibit B"); (Depo. of Leo Romer, Volume 1, taken July 25, 2013 in *Ruppel v. A. O.*

22 *Smith Corp., et al*., United States District Court for the Southern District of Illinois,

23 Case No. 3:12-cv-00293-GPM-SCW at20:13-21:5; 24:13-21; 53:10-20, relevant

24 excerpts of which are attached as "Exhibit C").

25       9.      A major component of the NRF (and, based on Mr. Yocum's Navy

26 records, the focus of his training at that site) was the A1W, a functional prototype of

27 the nuclear propulsion plant of the *U.S.S. Enterprise*, which provided a platform for

28 refining nuclear propulsion systems and training sailors.  (Exhibit B at 21:12-19;

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

86:22-87:3); (Depo. of Leo Romer, Volume 2, taken July 26, 2013 in *Ruppel v. A. O. Smith Corp., et al.*, United States District Court for the Southern District of Illinois, Case No. 3:12-cv-00293-GPM-SCW at 133:9-11, relevant excerpts of which are attached as "Exhibit D"); (Depo. of Gary Carlsen, taken Dec. 6, 2012 in *Harris v. CBS Corp.*, United States District Court for the Northern District of California, Case No. 5:12-cv-00049-EJD(HRL) at 291:20-292:2, relevant excerpts of which are attached as "Exhibit E"); (Depo. of Henry Douglas Ruppel, taken July 19, 2012 in *Ruppel v. A. O. Smith Corp., et al.*, State of Illinois, County of Madison, Case No. 2012L 000218 at195:16-21, relevant excerpts of which are attached as "Exhibit F").

10.     To achieve its intended purposes, the A1W precisely mirrored the *Enterprise*'s engineering spaces. (Exhibit F at 195:22-196:11). Thus, Westinghouse had no unilateral authority to deviate from the Navy's specifications, rules, and directives in performing its work at the NRF, including its work involving the A1W. (Exhibit B at 26:18-27:9; 176:1-14); (Exhibit C at 53:23-54:1). In particular, the precise materials used in A1W construction, maintenance, or repair work – including any asbestos-containing products – were dictated by the Navy's design specifications or "MilSpecs." (Exhibit B at 95:2-15); (Exhibit C at 65:19-66:6); (Exhibit F at 196:13-197:8).

11.     While Westinghouse had safety and industrial hygiene duties at the NRF, those also had to conform to the Navy's specifications, rules, and directives. (Exhibit B at 106:5-22). No safety or industrial hygiene-related practice could be implemented by Westinghouse at the NRF without Navy/AEC approval. (Exhibit D at 233:16-234:7)

12.     In 1959, as a result of ongoing discussions with the Navy and/or AEC, Westinghouse began monitoring asbestos levels at the NRF, including in the A1W. (Exhibit B at 47:6-48:14; 55:4-24; 72:21-24; 109:3-110:3; 116:25-117:15); (Exhibit C at 62:13-20; 63:9-11); (Exhibit D at 136:11-137:16). As was true of all aspects of Westinghouse's NRF work, it could not undertake any asbestos-related safety measure

1    without Navy/AEC review and approval.  (Exhibit D at 154:10-155:15).  Such

2    measures (like all aspects of Westinghouse's NRF work) were subject to constant

3    monitoring and audits by Navy/AEC officers; such officers directly participated in

4    those efforts; and Westinghouse was precluded from undertaking any such practice or

5    providing any warning at the NRF without Navy/AEC approval.  (Exhibit B at 37:7-

6    38:13; 47:6-48:14; 55:4-24; 60:9-61:6; 70:13-19; 72:21-24; 76:11-15; 84:7-14; 106:5-

7    22; 109:3-110:3; 116:25-117:15); (Exhibit C at 62:13-63:1; 62:21-63:1; 63:9-11;

8    (Exhibit F at 197:10-198:1; 199:14-200:2; 202:15-18); (Exhibit D at 136:11-137:16;

9    154:10-155:15; 231:19-25; 233:16-234:7)

10           13.    Despite constant monitoring and auditing of asbestos safety measures at

11   the NRF, neither the Navy nor the AEC ever voiced any criticism of Westinghouse in

12   this regard.  (Exhibit B at 84:7-14).  In fact, *none* of the samples taken at the NRF

13   during the relevant time period detected asbestos concentrations above then-allowed

14   threshold limit values ("TLVs").  (Id. at 60:9-61:6; 70:13-19; 76:11-15); (Exhibit C at

15   62:21-63:1); (Exhibit D at 231:19-25).

16           14.    In sum, all relevant aspects of Westinghouse's work at the NRF –

17   including the materials to be used in that work and the safety measures to be followed

18   – were subject to detailed Navy/AEC rules, regulations, and specifications.  (Exhibit B

19   at 95:2-15; 106:5-22); (Exhibit C at 65:19-66:6); (Exhibit D at 233:16-234:7);

20   (Exhibit F at 196:13-197:8).  Further, all aspects of that work were constantly

21   monitored by Navy/AEC officers, and Westinghouse's asbestos safety practices were

22   never found to deviate from the government's rules and regulations.  (Exhibit B at

23   37:7-38:13; 84:7-14); (Exhibit F at 197:10-198:1; 199:14-200:2; 202:15-18).

24           15.    The Navy had independent knowledge of asbestos-related health hazards

25   no later than 1922 and, even as of that early date, had prescribed certain measures to

26   prevent asbestos injuries.  (Report of Samuel A. Forman, M.D., Feb. 7, 2017, ¶¶ 27-

27   31, attached as "Exhibit G").  In fact, no later than the early 1940s, "the Navy had

28   become a leader in the field of occupational medicine relating to, among other things,

5

1  asbestos dust inhalation exposure."  (*Id.*, ¶ 26).

2      16.    The Navy's recognition of asbestos hazards was not, however, coupled

3  with openness to assistance in addressing those hazards.  For example, it rejected a

4  Department of Labor offer to inspect its shipyards in the 1940s because it knew it was

5  not implementing its own published safety measures and was worried that drawing

6  attention to asbestos would cause unrest among shipyard workers.  (*Id.*, ¶¶ 33-35).

7  Similarly, when Dr. Philip Drinker (consultant to the Navy Surgeon General and

8  Chief Health Consultant to the Navy's Division of Shipyard Labor Relations) relayed

9  an offer by asbestos insulation suppliers during that same era to provide a "brief

10  statement of precautions which should be taken in light of their own experience," he

11  was told that "***neither [the] Navy nor [the] Maritime [Commission] want[ed] any***

12  ***change in the specifications*** as the performance with the present materials [was]

13  entirely satisfactory." (*Id.*, ¶ 67) (emphasis added).  Even as late as the 1960s, the

14  Navy specifically considered whether a warning label was advisable for asbestos

15  insulation, but determined that a warning was ***not*** warranted under then-existing Navy

16  rules and regulations.  (*Id.*, ¶ 77).  Consistent with these incidents, the Navy's own

17  records fail to reveal "a single instance in which the Navy, at any time during the

18  1930s through the 1960s, instructed or permitted a supplier of steam driven equipment

19  . . . to affix or provide any asbestos-related warning with its equipment."  (*Id.*, ¶ 69).

20  <u>**APPLICATION OF 28 U.S.C. § 1442(a)(1) TO THESE FACTS**</u>

21      17.    As stated in *Durham v. Lockheed Martin Corp.*, , "[a] party seeking

22  removal under section 1442 must demonstrate that (a) it is a 'person' within the

23  meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant

24  to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable

25  federal defense.'"  445 F.3d 1247, 1251 (9th Cir. 2006), *citing Jefferson Cty. v. Acker*,

26  527 U.S. 423, 431 (1999) and *Mesa v. California*, 489 U.S. 121, 124-25, 131-35

27  (1989); *see also*, *e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014); *Inspire*

28  *Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, 2016 WL 5746337 at *4 (C.D.

1  Cal. Sept. 30, 2016).  Each of these elements is satisfied in this case.

2        18.    A corporation is a "person" entitled to assert "federal officer" jurisdiction

3  under 28 U.S.C. § 1442(a)(1).  *See*, *e.g.*, *Leite*, 749 F.3d at 1122, n.4.

4        19.    In essence, the "acting under" prong of the *Mesa* analysis is satisfied

5  whenever a defendant was not merely complying with federal law or regulation (such

6  as by merely functioning within a regulated industry), but was, instead, actually

7  assisting the federal government in carrying out its governmental functions or duties

8  thus giving rise to a "special relationship" between the defendant and the federal

9  government.  *Isaacson v. Dow Chem. Co*., 517 F.3d 129, 136-37 (2d Cir. 2008) (*citing*

10  *Watson v. Philip Morris Cos*., 127 S. Ct. 2301, 2307-08 and 2310 (2007)); *see also*,

11  *e.g.*, *Papp v. Fore-Kast Sales Co.*, 2016 WL 6871464 at *4 (3d Cir. Nov. 22, 2016);

12  *Hurley v. CBS Corp.*, 648 Fed. Appx 299, 303-04 (4th Cir. 2016); *Jacks v. Meridian*

13  *Resource Co*., 701 F.3d 1224, 1230 (8th Cir. 2012); *cf. Ruppel v. CBS Corp*., 701 F.3d

14  1176, 1181 (7th Cir. 2012) (stating that the "acting under" prong of the jurisdictional

15  test under § 1442(a)(1) is satisfied whenever a removal is affected by "defendants

16  working hand-in-hand with the federal government to achieve a task that furthers an

17  end of the federal government").  Such a "special relationship" is plainly shown – and

18  the "acting under" test satisfied – where a defendant contracted directly with the

19  federal government to design, manufacture and furnish "a product that the

20  Government was using during war – a product that, in the absence of [the defendant],

21  the Government would have had to produce itself."  *Isaacson*, 517 F.3d at 137;  *see*

22  *also, e.g.*, *Papp*, 2016 WL 6871464 at *4 (noting that such circumstances present the

23  "archetypal case" of "acting under" a federal officer); *Jacks*, 701 F.3d at 1231;

24  *Ruppel*, 701 F.3d at 1181.  As such, Westinghouse was "acting under" the Navy

25  and/or AEC – not only in its supervised management of the NRF – but in its design,

26  manufacture, supply, and use of any products or materials incorporated within the

27  A1W and similar installations at that site.  *Compare, e.g.*, *Ruppel*, 701 F.3d at 1181.

28        20.    Similarly, where a plaintiff claims injury from exposure to an asbestos-

1    containing product, and a showing is made that the defendant

2    manufacturer/contractor's design and/or manufacture of the product was controlled by

3    the United States government, the causal nexus required by § 1442(a)(1) has not

4    simply been established – it is "axiomatic."  *Madden v. Able Supply Co*., 205 F. Supp.

5    2d 695, 701-02 (S.D. Tex. 2002); *see also*, *e.g*., *Zeringue v. Crane Co*., 2017 WL

6    279496 at *6 (5th Cir. Jan. 20, 2017); *Savoie v. Huntington Ingalls, Inc*., 817 F.3d

7    457, 465-66 (5th Cir. 2016).

8    　　　21.   As to the question of a colorable federal-law based defense,

9    Westinghouse hereby asserts a government contractor defense under *Boyle v. United*

10   *Technologies Corp*., 487 U.S. 500, 512 (1988) in that: 1) Westinghouse designed,

11   manufactured, supplied, maintained, and/or used any asbestos-containing products

12   allegedly encountered by Mr. Yocum at the NRF in accordance with "reasonably

13   precise specifications" promulgated or adopted by the Navy; 2) all such products or

14   materials conformed with those specifications as evidenced by their acceptance

15   following thorough Navy testing and inspection; and 3) at all times relevant to this

16   suit, the Navy was independently aware of potential health hazards associated with

17   asbestos exposure.

18   　　　22.   Once again, numerous courts considering the propriety of the removal of

19   asbestos-related claims involving Westinghouse's design, manufacture, and supply of

20   Navy propulsion equipment (like the equipment incorporated within the A1W at the

21   NRF) have found that Westinghouse can state at least a colorable government

22   contractor defense in relation to such claims given the detailed specifications imposed

23   such activities by the Navy.  *See, e.g.*, *Ruppel*, 701 F.3d at 1183-86.  Furthermore, the

24   government contractor defense – while often applied to a defendant's design,

25   manufacture, and supply of products to the United States government – is equally

26   available in the context of service or performance contracts performed pursuant to

27   reasonably precise specifications imposed or approved by the government.  *See*, *e.g*.,

28   *Boyle*, 487 U.S. at 506 (finding "no basis for distinction" between procurement and

1 performance contracts for purposes of the government contractor defense); *Richland*

2 *Lexington Airport Dist. v. Atlas Props.*, 854 F. Supp. 400, 422 (D.S.C. 1994) ("[t]he

3 dispositive issue is not one of performance versus procurement, but whether there is a

4 uniquely federal interest in the subject matter of the contract"). Thus, Westinghouse

5 can also state such a defense relative to its overall management of the NRF under the

6 close, ongoing, supervision and control of the Navy and AEC.[2]

7      23.    As briefly summarized above, all aspects of Westinghouse's work at the

8 NRF – including its design, manufacture, supply, and/or use of any products or

9 materials as part of that work – were accepted or approved by the Navy and the AEC

10 as fully complying with all relevant specifications despite constant monitoring,

11 supervision, and inspection, by government officers. As such, Westinghouse can

12 make at least a colorable showing as to the second prong of the *Boyle* government

13 contractor test as well. *Compare*, *e.g.*, *Getz v. Boeing Co.*, 654 F.3d 852, 864 (9th Cir.

14 2011).

15      24.    As also briefly summarized above, the Navy was – at all times relevant to

16 Plaintiffs' claims – independently aware of asbestos-related health hazards, thus

17

18     [2] Based on Plaintiffs' First Amended Complaint, Westinghouse anticipates that

19 Plaintiffs may rely on *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992) to urge that the asbestos-containing thermal insulation incorporated within the

20 A1W was, if viewed in isolation, a "stock item" product to which the government contractor defense does not apply. However, and leaving aside whether such a "stock

21 item exception" might apply to a defendant, such as the one at issue in *In re Hawaii*, whose sole contact with the Navy involved its supply of a commercially-available

22 "stock item" product in whose design and manufacture the Navy did not participate (*but see*, *e.g.*, *Kase v. Metalclad Insulation Corp.*, 2016 WL 6892215 at *1 and 8-10

23 (Cal. Ct. App. Nov. 22, 2016), that purported exception cannot be extended to the very different circumstance where (as here) a defendant is alleged to have designed,

24 manufactured, and/or supplied complex equipment and propulsion systems which, viewed in their entirety, were uniquely designed and produced pursuant to government

25 specifications and which simply incorporated certain "stock item" components. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001). *See also*

26 *Brinson v. Ratheon Co.*, 571 F.3d 1348, 1356-57 (11th Cir. 2009); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1022-23 (S.D. Ill.1989). Any such

27 interpretation of the government contractor defense would, in fact, be absurd, as "all products can eventually be broken down into various off-the-shelf components."

28 *Miller*, 275 F.3d at 419-20. *See also Twinam v. Dow Chem. Co.*, 517 F.3d 76, 90 (2d Cir. 2008); *Getz v. Boeing Co.*, 690 F. Supp. 2d 982, 993 (N.D. Cal. 2010).

1   satisfying the third prong of the *Boyle* test.  *See generally*, *Getz*, 654 F.3d at 865-66.

2   *Compare*, *e.g.*, *Ruppel*, 701 F.3d at 1185.

3       25.     As noted above, while Westinghouse offers this statement to satisfy its

4   obligation under 28 U.S.C. § 1446(a) to provide a short and plain statement of the

5   legal and factual basis for removal, it reserves the right and requests an opportunity to

6   respond more fully in writing to any motion for remand in this case, and to

7   supplement the record with affidavits, declarations, and/or MilSpecs supporting the

8   assertions of fact herein.

9       26.     A properly removed case cannot be remanded for discretionary or policy

10  reasons such as allegedly related state court cases or a contention that judicial

11  economy compels remand.  28 U.S.C. § 1447(c); *Thermitron Products, Inc. v.*

12  *Hermansdorfer*, 423 U.S. 336 (1976).

13      27.     Westinghouse has no duty to notify in advance, nor obtain the consent of,

14  any other defendant to this action in order to remove this case pursuant to 28 U.S.C.

15  § 1442 (a)(1).  *See, e.g., Durham*, 445 F.3d at 1253.

16      28.     Westinghouse has attached those documents required by 28 U.S.C. §

17  1446(a), the Local Rules of this Court, and/or the Local Rules of the Superior Court of

18  Los Angeles County, California.

19      29.     In compliance with 28 U.S.C. § 1446(d), Westinghouse will promptly

20  provide written notice of this Notice of Removal to all adverse parties, and, promptly

21  after the filing of this Notice of Removal, will file a copy thereof with the Clerk of the

22  Superior Court of Los Angeles County, California.  A copy of the Notice to Adverse

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

1   Parties of Removal of Action to Federal Court, in the form in which it will be filed

2   and served (without Exhibits), is attached as "Exhibit I."

3

4

5   Dated:  February 9, 2017                  POND NORTH LLP

6                                    By:   */s/ Justin F. Cronin*

7                                          JUSTIN F. CRONIN
                                           Attorneys for Defendant CBS Corporation, a
8                                          Delaware corporation, f/k/a Viacom Inc.,
                                           successor by merger to CBS Corporation, a
9                                          Pennsylvania corporation, f/k/a Westinghouse
                                           Electric Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

1

## **DEMAND FOR TRIAL BY JURY**

2

Defendant CBS Corporation hereby demands a trial by jury in this action.

3

4

Dated:  February 9, 2017                          POND NORTH LLP

5

6

By:  */s/ Justin F. Cronin*
                                                                JUSTIN F. CRONIN
7                                                                Attorneys for Defendant CBS Corporation, a
                                                                Delaware corporation, f/k/a Viacom Inc.,
8                                                                successor by merger to CBS Corporation, a
                                                                Pennsylvania corporation, f/k/a Westinghouse
9                                                                Electric Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

## <u>DECLARATION OF JUSTIN F. CRONIN</u>

I, JUSTIN F. CRONIN, declare as follows:

1.      I am an attorney at law, duly licensed by and in good standing with the State of California.  I am admitted to practice before the United States District Court for the Central District of California.  I am a senior associate with the law firm of Pond North LLP, counsel of record for Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation ("CBS Corporation").

2.      The facts set forth in this Declaration are of my own personal knowledge, and if called as a witness, I would and could competently testify to the matters set forth below.

3.      Attached hereto as <u>Exhibit A</u> are true and correct copies of the Summons on the First Amended Complaint, First Amended Complaint, and accompanying documents served on CBS Corporation on January 13, 2017.

4.      Attached hereto as <u>Exhibit B</u> are true and correct copies of excerpts from the deposition transcript of Leo Romer, taken jointly on July 21, 1993, in the cases entitled *Bernice Tuck v. Owens Corning Fiberglass Corporation*, State of Idaho, County of Bannock, Case No. 41528-C, *All Idaho National Engineering Laboratory (INEL) Actions*, United States District Court for the Eastern District of Pennsylvania, Case No. 875, and *Master Asbestos File No. 2*, United States District Court of Idaho, Case No. 3695.

5.      Attached hereto as <u>Exhibit C</u> are true and correct copies of excerpts from the deposition transcript of Leo Romer, Volume 1, taken on July 25, 2013, in the case entitled *Henry Ruppel v. A. O. Smith Corporation, et al*., United States District Court for the Southern District of Illinois, Case No. 3:12-cv-00293-GPM-SCW.

6.      Attached hereto as <u>Exhibit D</u> are true and correct copies of excerpts from the deposition transcript of Leo Romer, Volume 2, taken on July 26, 2013, in the case

1   entitled *Henry Ruppel v. A. O. Smith Corporation, et al*., United States District Court
2   for the Southern District of Illinois, Case No. 3:12-cv-00293-GPM-SCW.

3           7.      Attached hereto as <u>Exhibit E</u> are true and correct copies of excerpts from
4   the deposition transcript of Gary Carlsen, taken on December 6, 2012, in the case
5   entitled *William L. Harris and Jean Harris v. CBS Corporation, et al*., United States
6   District Court for the Northern District of California, Case No. 5:12-cv-00049-
7   EJD(HRL).

8           8.      Attached hereto as <u>Exhibit F</u> are true and correct copies of excerpts from
9   the deposition transcript of Henry Douglas Ruppel, taken on July 19, 2012, in the case
10  entitled *Henry Ruppel v. A. O. Smith Corporation, et al*., State of Illinois, County of
11  Madison, Case No. 2012L 000218.

12          9.      Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Report of
13  Samuel A. Forman, dated February 7, 2017.

14          10.     Pursuant to 28 U.S.C. § 1446(a), attached hereto as <u>Exhibit H</u> are true
15  and correct copies of the orders served on my client, CBS Corporation, in the State
16  Court Action in the Los Angeles Superior Court (Case No.: BC630115), consisting of
17  (i) an Order Granting Plaintiffs' Ex Parte Motion for Order Immediately Setting
18  Deposition of Dying Plaintiff, entered on January 18, 2017; and (ii) a Minute Order re:
19  Ex Parte to Set Deposition of Plaintiff, entered on January 18, 2017.

20          11.     In compliance with 28 U.S.C. § 1446(d), Westinghouse will promptly
21  provide written notice of this Notice of Removal to all adverse parties, and, promptly
22  after the filing of this Notice of Removal, will file a copy thereof with the Clerk of the
23  Superior Court of Los Angeles County, California.  A copy of the Notice to Adverse
24  Parties of Removal of Action to Federal Court, in the form in which it will be filed
25  and served (without Exhibits), is attached as "Exhibit I."

26          I declare under the penalty of perjury, under the laws of the State of California
27  ///
28  ///

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

1    and the United States of America, that the foregoing is true and correct, and that this

2    Declaration was executed this 9th day of February, 2017, at Los Angeles, California.

3

4                                                _/s/ Justin F. Cronin_____
                                                 JUSTIN F. CRONIN
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28
U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN
4520-4525:4846-8049-7218.v1

1

**PROOF OF SERVICE**

2

    I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071.

3

4

    On February 9, 2017, I served the following document(s): **DEFENDANT CBS CORPORATION'S NOTICE OF REMOVAL OF ACTION BASED ON 28 U.S.C. § 1442(A)(1); DEMAND FOR JURY TRIAL; DECLARATION OF JUSTIN F. CRONIN** On the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

5

6

7

KAZAN, McCLAIN, SATTERLY & GREENWOOD
55 Harrison Street, Suite 400
Oakland, CA 94607
*Attorneys for Plaintiffs*

8

9

10

☒    I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at, Los Angeles, California.

11

12

13

14

15

Executed: February 9, 2017

16

☒    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

17

18

19

Judith L. Engler
4520-4525

20

21

22

23

24

25

26

27

28