UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

JS-6

**CASE NO.:** CV 17-01061 SJO (AJWx)     **DATE:** August 21, 2017

**TITLE:** Wayne Yocum, et al. v. CBS Corporation, et al.

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                         Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**     **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                              Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFFS' RENEWED MOTION TO REMAND** [Docket No. 52]

This matter is before the Court on Plaintiffs Wayne Yocum ("Mr. Yocum") and Tina Yocum's ("Tina") (collectively, "Plaintiffs") Motion to Remand ("Renewed Motion"), filed July 14, 2017. Defendant CBS Corporation, formerly known as Viacom Inc., successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation ("Defendant" or "Westinghouse") opposed the Renewed Motion ("Renewed Opposition") on July 24, 2017, to which Plaintiffs replied ("Renewed Reply") on August 3, 2017.[1] The Court found this matter suitable for disposition without oral argument and vacated the hearing set for August 14, 2017. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS** Plaintiffs' Renewed Motion to Remand.

I.     FACTUAL AND PROCEDURAL BACKGROUND

     A.     Factual Background

The following allegations are relevant to Plaintiffs' claims against Westinghouse.

Mr. Yocum served in the U.S. Navy from 1965-1972. (*See generally* Notice of Removal ("Removal"), Ex. A, First Am. Compl. ("FAC"), 2, ECF No. 1-1.) After completing boot camp, Mr. Yocum attended the Machinist Mate "A" school at Great Lakes Training Center in Illinois; the Nuclear Power School at Mare Island; and the Naval Power Training Unit located at Idaho National Engineering Laboratory ("INEL"). (FAC 2.) At INEL, Mr. Yocum attended a training course on the A1W prototype at the Nuclear Reactors Facility ("NRF") for approximately four months. (*See* Decl.Kevin Jamison in Supp. Def's Renewed Opp'n ("Jamison Decl.") ¶ 9, ECF No. 56-11, Ex. A, Pl.'s Resp. to Standard Interrogs. ("Pl.'s Interrogs.") 6, ECF No. 56-12.) The A1W was a working

---

[1] Plaintiffs timely filed a Rely on July 31, 2017, and subsequently filed a Notice of Errata in Support of their Reply on August 3, 2017. (ECF Nos. 60-61.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 17-01061 SJO (AJWx)          DATE: August 21, 2017

prototype of the *USS Enterprise*'s nuclear propulsion system, which provided the Navy with a platform for training soldiers to operate similar systems on other ships. (*See* Jamison Decl., Ex. B, ECF No. 56-13.) Following the training, Mr. Yocum served aboard the *USS Jouett* from 1966 to 1968 while it was under construction at the Bremerton Naval Shipyard. (*See* FAC 2-3; Pl.'s Interrogs. 6.) Mr. Yocum also served on the *USS DeHaven* from 1968 to 1972, which included its overhaul in 1969 at the Long Beach Naval Shipyard in California. (FAC 3.)

Westinghouse supplied the asbestos-containing insulation that was installed, removed, handled, or otherwise manipulated in Mr. Yocum's presence. (FAC 9.) As a result of his exposure to the asbestos-containing insulation supplied by Westinghouse to the U.S. Navy, Mr. Yocum developed malignant mesothelioma, (FAC 9), and died on February 5, 2017. (Mot. 1, ECF No. 24.)

    B.    Procedural Background

Plaintiffs initiated this action in the Superior Court of California for the County of Los Angeles ("Superior Court"), on August 11, 2016. On January 6, 2017, Plaintiffs filed the FAC against various product and premises defendants, alleging strict products liability, negligence, fraud and loss of consortium stemming from Mr. Yocum's exposure to asbestos while serving in the U.S. Navy from 1965-1972, and his resulting diagnosis of mesothelioma. (*See generally* FAC.) With respect to Westinghouse, Plaintiffs allege only strict products liability/design defect (by Mr. Yocum) and loss of consortium (by Tina). (*See* FAC 2.) Westinghouse was served with the FAC on January 13, 2016. (*See* Removal.)

Mr. Yocum died of mesothelioma on February 5, 2017; two days later, on February 7, 2017, Plaintiffs served all Defendants with a Notice of Death. (Mot. 1.) On February 9, 2017, Westinghouse removed the action to this Court based on the claim that, at the time of Mr. Yocum's alleged exposure, Westinghouse was acting under the direction of the U.S. Navy, and is therefore entitled to assert federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) ("Section 1442"). (*See* Removal 6-7.) Although the other Defendants did not join in the Removal, it is unnecessary, as "a federal officer or agency defendant can unilaterally remove a case under Section 1442. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

On March 13, 2017, Plaintiffs filed their initial Motion to Remand ("Motion"), making both procedural and substantive attacks on Westinghouse's removal. (ECF No. 24.) On May 1, 2017, the Court denied Plaintiffs' Motion, finding that Plaintiffs' procedural attacks were untimely and that subject matter jurisdiction was proper pursuant to Section 1442. (Order Den. Pls.' Mot. Remand ("Remand Order"), ECF No. 46.) In relevant part, the Court found that the A1W was "military equipment" for purposes of a colorable military contractor defense. (*See* Remand Order 6-8.)

At the June 26, 2017 scheduling conference, the Court informed the parties that it was reconsidering the issue of whether Defendant raised a colorable military contractor defense to invoke subject matter jurisdiction. The Court invited Plaintiffs to file a renewed motion to remand

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  \_\_\_\_
Send  \_\_\_\_
Enter  \_\_\_\_
Closed  \_\_\_\_
JS-5/JS-6  \_\_\_\_
Scan Only  \_\_\_\_

CASE NO.:  CV 17-01061 SJO (AJWx)          DATE:  August 21, 2017

and set a date for Plaintiffs to file its motion.  (June 26, 2017 Tr. Scheduling Conference ("Tr. Scheduling Conference") 7:15-21, ECF No. 48.)  Plaintiffs timely filed the Renewed Motion.

Here, Plaintiffs argue that remand is warranted because (1) their initial Motion to remand was timely-filed and did not constitute either a waiver or forfeiture of their procedural attack on Westinghouse's removal; (2) removal was improper because Mr. Yocum's death left no case pending in state court; and (3) the parties' evidence shows that Westinghouse has no colorable federal defense and is unable to establish the requisite causal nexus. (Renewed Mot. 7, ECF No. 52.)  Because the Court made clear that it intended to "revisit the military contractor defense," the Court analyzes Plaintiffs' substantive attack and declines to discuss Plaintiffs' other grounds for remand.  (*See* Tr. Scheduling Conference 7:10-11.)

II.     DISCUSSION

        A.      Legal Standard

An action is removable to federal court only if it could have been brought there originally. *See* 28 U.S.C. § 1441(a). "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  The Ninth Circuit requires courts to "strictly construe the removal statutes against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the court must remand the action.  28 U.S.C. § 1447(c).

"A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, 'the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1).'" *Walek v. Boeing Co.*, No. EDCV 15-00309 DOC, 2016 WL 910150, at *2 (C.D. Cal. Mar. 9, 2016) (quoting *Leite v. Crane Co.*, 794 F.3d 1117, 1122 (9th Cir. 2014)).  A motion to remand "may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations." *Leite*, 749 F.3d at 1122.  Here, Plaintiffs raise a "factual" challenge to jurisdiction.  In response to a factual attack, which contests the truth of the nonmovant's factual allegations, the nonmovant "must support its jurisdictional allegations with competent proof . . . under the same evidentiary standard that governs in the summary judgment context." *Id.* at 1121 (citations omitted).  The nonmovant "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject matter jurisdiction has been met." *Id.*  If the existence of jurisdiction turns on disputed factual issues, however, the Court may resolve those factual disputes itself.  *Id.*

The federal officer removal statute, Section 1442, is "liberally construed" in favor of removal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 17-01061 SJO (AJWx)</u>     DATE: <u>August 21, 2017</u>

because "the right of removal is absolute for conduct performed under the color of federal office."[2] *Durham*, 445 F.3d at 1251 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). Federal officers, agents, and contractors may remove cases based on acts performed under color of a federal office if they assert a colorable federal defense. *Durham*, 445 F.3d at 1251. To do so, the removing defendant need not show that the defense is meritorious, but that there is a legitimate question of federal law to be decided regarding the validity of the defense. *See Mesa v. California*, 489 U.S. 121, 129 (1989). The party seeking removal "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

    B.    <u>The Military Contractor Defense</u>

Westinghouse asserts the government/military contractor defense recognized in *Boyle v. United Techs. Corp*. *See* 487 U.S. 500 (1988). Generally, military contractors are immunized from liability when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *See Boyle*, 487 U.S. at 512. In such situations, "the government must have been sufficiently involved in the design of the defective feature or defective warnings so it can be said that the contractor is acting 'under the color' of his duties as an agent of a federal officer." *Prewett v. Goulds Pumps (IPG)*, No. CV 09-00838 RSM, 2009 WL 2959877, at *3 (W.D. Wash. Sept. 9, 2009); *see also Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ("A majority of courts have held that the federal official must have 'direct and detailed control' over the defendant.") (citation omitted). As this defense is an affirmative defense, the defendant bears the burden of proof. *See Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).

However, the military contractor defense is only available when the contractor produced "military equipment" for the United States, and does not apply to "an ordinary consumer product purchased

---

[2] Section 1442 permits removal of civil actions that are filed against or directed to: The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. 28 U.S.C. § 1442(a)(1).

A federal contractor may properly remove an action under Section 1442 if the defendant: (1) is a "person" within the meaning of the statute; (2) can demonstrate a causal nexus between the plaintiff's claims and the actions it took pursuant to the direction of a federal officer; (3) and raises a colorable defense based upon federal law. *See Leite*, 749 F.3d at 1120.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** <u>CV 17-01061 SJO (AJWx)</u>  **DATE:** <u>August 21, 2017</u>

by the armed forces." *In re Haw. Fed. Asbestos Cases*, 960 F.2d 806, 811-12 (1992) ("The fact that the military may order such products does not make them 'military equipment.' The products have not been developed on the basis of involved judgements made by the military but in response to the broader needs and desires of end-users in the private sector."). As the Ninth Circuit held: "Where the goods ordered by the military are those readily available in substantially similar form to commercial users, the military contractor defense does not apply." *Id.* at 811. For example, if the military orders "a quantity of stock helicopters that happen to be equipped with escape hatches opening outward, it is impossible to say that the Government had a significant interest in that particular feature." *Id.* (citing *Boyle*, 487 U.S. at 509); *see, e.g., Moore v. Asbestos Defs. (B*P)*, No. CV 10-01638, 2010 WL 2650487, at *3 (N.D. Cal. Jul 1, 2010) (asbestos-containing thermal insulation sold to the military by a private company did not constitute military equipment because it was available to ordinary consumers); *Delahaye v. Asbestos Defs.*, No. CV 09-05504, 2010 WL 366611, at *1 (N.D. Cal. Jan. 25, 2010); *Fong v. Asbestos Defs. (B*P)*, No. CV 10-00287, 2010 WL 1526099, at *1 (N.D. Cal. Apr. 15, 2010).

Plaintiffs contest that the military contractor defense does not apply to the commercially available asbestos insulation that Westinghouse supplied. (Renewed Mot. 18-20.) The Court agrees.

  C. <u>The Westinghouse-Supplied Insulation Does Not Constitute "Military Equipment"</u>

The product at issue is the asbestos-containing insulation that Westinghouse supplied to the military and which was installed, removed, handled, or otherwise manipulated in Mr. Yocum's presence at the A1W facility. (*See* FAC 9.) In the FAC, Plaintiffs specifically allege that the "asbestos-containing insulation that Westinghouse supplied to the military for use was fungible in color, size, shape, texture, and function to those supplied by Westinghouse for commercial (non-military) use, and was readily available, in substantially similar form, to commercial users." (FAC 9.) Plaintiffs do not argue that the insulation was designed for the Navy, nor that any product other than the Westinghouse-supplied insulation caused Mr. Yocum's injuries. Rather, as clarified in their Renewed Motion, Plaintiffs do **not** allege that "(i) the Westinghouse-supplied insulation was designed as part of a more complex machinery system; (ii) Westinghouse's design of the A1W or any machinery in that land-based prototype exposed Mr. Yocum to asbestos; or (iii) Mr. Yocum's asbestos exposure stems from Westinghouse's negligent acts at the A1W.[3] (Renewed Mot. 9.)

---

[3] Because Plaintiffs' claim against Westinghouse stems only from the asbestos-containing insulation that was "supplied" by Westinghouse, (FAC 9), the Court disregards the parties' argument regarding whether Westinghouse was responsible for operating and maintaining the A1W and whether Westinghouse engineered, fabricated, and supplied turbines, pumps, and other equipment for the A1W. (*See* Renewed Mot. 11-12.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| **CASE NO.:** <u>CV 17-01061 SJO (AJWx)</u> | **DATE:** <u>August 21, 2017</u> |

In response, Westinghouse belabors its erroneous position that "the object at issue . . . is the A1W as a whole," "given the overall context of Westinghouse's work at the NRF, as well as Westinghouse's status as a party who purchased a commercially-available product to carry out its government-imposed duties, rather than as a manufacturer of such a product." (Renewed Opp'n 8-9.) In support, Westinghouse presents evidence pertaining to the A1W and several of its components and products (such as nuclear reactor components and turbines).[4] This evidence is inapposite to the crucial question: was the **insulation** supplied by Westinghouse "developed on the basis of involved judgments made by the military," or was it "an ordinary consumer product purchased by the armed forces"? *See In re Haw.*, 960 F.2d at 811-12. Westinghouse does not dispute that the insulation it supplied to the A1W was a "commercially-available product." (Renewed Opp'n 8.)

The district court's opinion in *Luce v. A.W. Chesteron Co.*, No. CV 10-00174 MMC, 2010 WL 963213, at *1-3 (N.D. Cal. Mar. 16, 2010), is instructive. There, the court began with the "threshold" determination: the defendants' assertion "that Westinghouse constructed turbines at the direction of the Navy . . . supports a removal pursuant to § 1442(a)(1) only if plaintiffs have alleged that [plaintiff] was exposed to asbestos in turbines manufactured by Westinghouse and/or GE" and at the direction of the Navy. *See* 2010 WL 963213, at *1. However, upon examining the complaint and remand motion, the court concluded that, because plaintiffs alleged exposure "to asbestos-containing **electrical components** manufactured by Westinghouse and GE, and are not claiming he was exposed to asbestos in any turbine, and because neither [defendant] asserts that

---

[4] For example, assuming it is admissible, Westinghouse proffers evidence purporting to show that "[c]ompliance with the standards and specifications required for ships and equipment built for Navy use was and is directly monitored by Naval Machinery Inspectors," and that the "nuclear reactor components and turbines built for Navy vessels . . . were manufactured according to plans and specifications prepared, written and issued exclusively by the Navy . . . ." (*See* Jamison Decl. ¶ 9, Ex. H Aff. Ret. Rear Admiral Roger Horne ("Horne Aff.") ¶¶ 13, 21, ECF No. 56-18.)

Relatedly, Plaintiffs' Evidentiary Objections, (Renewed Mot., Ex. 5 Pls.' Evidentiary Objections in Supp. Renewed Mot., ECF No. 52-5), are **DENIED AS MOOT** because the objected-to Declaration of Kevin D. Jamison in Support of Defendant's Opposition was filed in connection with the original Motion to remand, which the Court has ruled on and which the Court declines to consider in light of the parties' renewed briefs. Similarly, Plaintiffs' Additional Evidentiary Objections, (Renewed Reply, Ex. 1 Pls.' Additional Evidentiary Objections in Supp. Renewed Mot., ECF No. 60-1), are **DENIED AS MOOT** as to Defendant's Request for Judicial Notice because the request for judicial notice was filed in connection with the original Motion. The Court responds to the remaining objections only where such evidence is relied upon in this Order.


**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** <u>CV 17-01061 SJO (AJWx)</u>  **DATE:** <u>August 21, 2017</u>

it manufactured any electrical component at the direction of a federal official, the Court finds there is no basis for federal jurisdiction . . . ."  *Id.* at *2-3 (emphasis added); *see also In re Haw.*, 960 F.2d at 812 (concluding that "the **asbestos insulation** alleged to have caused the plaintiffs' injuries [ ] does not represent military equipment entitling its manufacturers to the protections of the military contractor defense'" because the insulation "was not manufactured with the special needs of the military in mind") (emphasis added).  The same reasoning applies here.

Defendant also relies, fruitlessly, on *B.A.F. v. Boeing Co.*, No. CV 09-07884 ODW, 2010 WL 11515459 (C.D. Cal. Jan. 29, 2010), to argue that the Court's "military equipment" assessment should focus on the A1W, rather than the insulation, and argues that Plaintiffs "artful pleading . . . artificially seek[s] to view the A1W's insulation in isolation." (Renewed Opp'n 10-11.)  *B.A.F.* is factually inapposite.  There, the court appropriately considered whether the subject helicopter, as a whole, constituted "military equipment" because the helicopter–not its component parts–was the product at issue.  See *B.A.F.*, 2010 WL 11515459, at *4.  In contrast, here, Plaintiffs' claim pertains only to the insulation supplied by Westinghouse.  Thus, Defendant fails to demonstrate that the insulation constitutes "military equipment."

Even assuming the Navy "required Westinghouse to meet certain insulation-related performance specifications," which Plaintiffs concede, (*see* Renewed Mot. 8, 21),"the fact that the [insulation] meets the military's specifications does not by itself make that product 'military equipment.'"  *See Moore*, 2010 WL 2650487, at *3 (stating that, although the Navy "mandated certain testing and analysis of the piping insulation, [it] did not require any unique design or manufacturing specifications"); *see also Delahaye*, 2010 WL 366611, at 4 (where defendant submitted evidence of lists of military-approved materials and evidence that the Navy tested asbestos-containing Unibestos insulation, defendant only demonstrated that, at most, Unibestos was subject to testing by the Navy and that the Navy approved Unibestos as a material to be used; defendant did not rebut plaintiff's argument that the Unibestos did not constitute "military equipment").

The Court underscores that it is Westinghouse's burden to show a colorable federal defense.  *See Snell*, 107 F.3d at 746.  Westinghouse fails to demonstrate, with evidence, that the insulation supplied was "manufactured with the special needs of the military in mind" in order to constitute "military equipment."  *See B.A.F.*, 2010 WL 11515459, at *4 (internal citation omitted).  Because the military contractor defense "does not apply to an ordinary consumer product purchased by the armed forces," *id.*, this action is not removable under Section 1442.

III.     <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Renewed Motion and **REMANDS** the action to the Superior Court for the County of Los Angeles.  This case shall close.

IT IS SO ORDERED.